UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DAVID E. JIMENEZ,

                        Plaintiff,

          -v-

THE CITY OF NEW YORK, NYPD Officer
ALBERTO ESPINAL, NYPD Officer "FNU"
CALVENESE, NYPD Officers JOHN DOE 1
and JOHN DOE 2, in their individual capacities,

                        Defendants.
---------------------------------------------------------------x

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

INDEX NO. 13-CV-8016 (KBF)

ECF CASE

Plaintiff DAVID E. JIMENEZ, through his attorney Robert M. Quackenbush of Rankin & Taylor, PLLC, as and for his complaint, does hereby state and allege:

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with pendant claims under New York common law.

2. Plaintiff DAVID E. JIMENEZ's right to be free from unreasonable and retaliatory searches and seizures was violated when New York City Police Department ("NYPD") Officer ALBERTO ESPINAL unlawfully arrested Mr. JIMENEZ in the course of an apparently coordinated effort to issue criminal court summonses to cyclists in the vicinity of Eighth Avenue and 34th Street in Manhattan.

3. After Mr. JIMENEZ educated the officers that, in fact, there was no law requiring adult cyclists to wear helmets and, in fact, there was no law requiring that all bicycles in use have reflectors (thereby undercutting their bases for stopping Mr. JIMENEZ), ESPINAL retaliated

against Mr. JIMENEZ by tackling him to the ground, arresting him, and swearing out bogus allegations in support of charges for obstruction of governmental administration, disorderly conduct, and resisting arrest.

4. By arresting Mr. JIMENEZ without probable cause to believe he had violated any actual law, (as opposed to the offenses which ESPINAL apparently believed existed or wanted to exist), the defendant-officers violated Mr. JIMENEZ's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

5. Accordingly, Mr. JIMENEZ seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth and Fourteenth Amendments to the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. JIMENEZ's claim arose in the County and State of New York, within the confines of this judicial district.

8. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

9. Consistent with the requirements of New York General Municipal Law § 50-e, Mr. JIMENEZ filed a timely Notice of Claim with the New York City Comptroller on or about July 2, 2013, within 90 days of the events described below. Thus, this Court has supplemental jurisdiction over Mr. JIMENEZ's claims under New York common law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

10. Mr. JIMENEZ's claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

11. Plaintiff DAVID E. JIMENEZ is, and was at all times relevant to this action, a resident of the County of Queens in the State of New York.

12. At the time of the incident described below, Mr. JIMENEZ was employed as a tour guide for Bike and Roll, a company that, *inter alia*, conducts guided bicycle tours in several large cities in the United States, including New York City.

13. At the precise time of his encounter with the officer-defendants, Mr. JIMENEZ was cycling *en route* to Central Park, where he was scheduled begin a shift working as a tour guide.

14. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

15. Defendants NYPD Officer ALBERTO ESPINAL, NYPD Officer "FNU" CALVENESE, and NYPD Officers JOHN DOE 1 and 2 (all being collectively referred to herein as "officer-defendants") were at all times relevant herein officers, employees and agents of the NYPD.

16. The true names of the JOHN DOE defendants and the true first name of Officer CALVENESE are not currently known to Mr. JIMENEZ.[1] However, upon information and belief, the JOHN DOE defendants and Officer CALVENESE were employees or agents of the NYPD on April 4, 2013. Accordingly, they are entitled to representation in this action by

---

[1] By referring to the officer-defendants as "John Doe," plaintiff makes no representation concerning their gender. Further, by referring to these defendants as "Officer(s)," plaintiff makes no representation concerning their actual ranks within the NYPD.

the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k.

17. The Law Department, then, is hereby put on notice (a) that Mr. JIMENEZ intends to name those officers as defendants in an amended pleading once their true and complete names become known to him and (b) that the Law Department should immediately begin preparing their defenses in this action.

18. Upon information and belief, on April 4, 2013, the officer-defendants were assigned to work out of the NYPD's Midtown South Precinct.

19. Plaintiff is suing the officer-defendants herein in their individual capacities.

20. At all times relevant herein, the officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties in the capacity.

21. The officer-defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. JIMENEZ's federally protected rights.

## STATEMENT OF FACTS

22. The incident described herein occurred on April 4, 2013 at approximately 11:45 a.m. near the northwest corner of Eighth Avenue and 34th Street in the County and State of New York.

23. At approximately the above time, Mr. JIMENEZ rode his bicycle from the vicinity of New York University towards Central Park, where Mr. JIMENEZ was scheduled to begin his shift as a tour guide with Bike and Roll.

24. Mr. JIMENEZ proceeded north in the Eighth Avenue bike lane as he approached the intersection with 34th Street.

25. At least one NYPD vehicle was parked in the Eighth Avenue bike lane on the north side of the intersection with 34th Street, blocking Mr. Jimenez's path of travel.

26. Officer ESPINAL was in the process of writing at least two criminal court summonses to cyclists at the time Mr. JIMENEZ lawfully rode his bicycle through the intersection.

27. Since Mr. JIMENEZ obviously could not proceed in the bike lane due to the parked vehicle, and since he did not want to ride his bike onto the sidewalk or into vehicular traffic to his right, Mr. JIMENEZ brought his bicycle to a full stop immediately behind the NYPD vehicle.

28. When Mr. JIMENEZ brought his bicycle to a stop, Officer ESPINAL told Mr. JIMENEZ, in sum and substance, "HEY, WELCOME TO THE PARTY. GIVE ME YOUR I.D."

29. Mr. JIMENEZ asked why he needed to show his identification.

30. Officer ESPINAL responded by stating, in sum and substance, "WHEN A POLICE OFFICER ASKS FOR YOUR I.D., YOU MUST GIVE IT TO HIM."

31. Mr. JIMENEZ informed Officer ESPINAL, in sum and substance, that there was no law requiring a law-abiding person to produce his identification to a police officer.

32. Officer ESPINAL then told Mr. JIMENEZ, "YOU DON'T HAVE A HELMET."

33. In response, Mr. JIMENEZ explained that, since he was over the age of fourteen, there is no law requiring him to wear a helmet.

34. In any event, Mr. JIMENEZ had a helmet strapped to his backpack, as he would be required to wear a helmet while conducting the bicycle tour for Bike and Roll.

35. Officer ESPINAL then stated, in sum and substance, "I DON'T SEE REFLECTORS."

36. In response, Mr. JIMENEZ explained, in sum and substance, that since he was obviously not riding a "new" bicycle, there was no requirement that his bicycle have reflectors.

37. Because there was no lawful basis for the stop, Mr. JIMENEZ refused to produce his identification.

38. As Mr. JIMENEZ and Officer ESPINAL discussed the propriety of Officer ESPINAL's conduct and his ignorance of the law, Mr. JIMENEZ asked Officer ESPINAL for his name and shield number.

39. In response, Officer ESPINAL walked away without answering, apparently to finish writing criminal court summonses to two other adults for not wearing helmets.

40. As Officer ESPINAL walked away, Officer CALVENESE approached Mr. JIMENEZ.

41. Mr. JIMENEZ asked for Officer CALVENESE for his name and badge number, which Officer CALVENESE gave to Mr. JIMENEZ.

42. A short time later, Officer ESPINAL returned and asked Mr. JIMENEZ, in sum and substance, "ARE YOU GOING TO GIVE ME YOUR I.D.?"

43. Because there was no lawful basis for the stop, Mr. JIMENEZ again declined to produce his identification.

44. Officer ESPINAL then grabbed Mr. JIMENEZ and, while Mr. JIMENEZ was straddling the bicycle's top tube with both feet on the ground, tackled him to the pavement.

45. One of the officers stuck his hand into Mr. JIMENEZ's back pocket, without consent, and took Mr. JIMENEZ's identification. The officers then placed Mr. JIMENEZ in handcuffs.

46. Officers CALVENESE, DOE 1 and DOE 2 observed the events described above, and they were mere steps from Mr. JIMENEZ when he was grabbed, tackled and placed in handcuffs. However, despite having a reasonable opportunity to intervene to prevent the unlawful seizure, they failed to do so.

47. The officers placed Mr. JIMENEZ into a police vehicle and transported him to the NYPD's Midtown South Precinct stationhouse located at 357 West 35th Street.

48. Upon arrival in the precinct stationhouse, Officer ESPINAL informed the desk sergeant that the arrest was made as part of a so-called "BIKE INITIATIVE."

49. While Mr. JIMENEZ was in custody, Officer ESPINAL made statements that can only be described as truly bizarre:

    a. In response to Mr. JIMENEZ accusing Officer ESPINAL of violating the Patrol Guide by refusing to give his name and shield number upon request, Officer ESPINAL exclaimed, "THE PATROL GUIDE DOESN'T MATTER!"

    b. In response to overhearing a conversation between Mr. JIMENEZ and another police official about the possibility of receiving a desk appearance ticket (rather than being processed through Central Booking), Officer ESPINAL interjected and asserted, "HE'S NOT ELIGIBLE FOR A D.A.T.! HE'S GOING THROUGH THE SYSTEM."

    c. In an apparent attempt to chill Mr. JIMENEZ, Officer ESPINAL told him that it is a felony to sue a police officer.

50. Officer ESPINAL swore out a litany of lies in the criminal court complaint in support of the charges of obstruction of governmental administration in the second degree (N.Y. Pen. L. § 195.05), resisting arrest (N.Y. Pen. L. § 205.30), and disorderly conduct (N.Y. Pen. L. § 240.20(2)).

51. The criminal court released Mr. JIMENEZ on his own recognizance at approximately 1:15 a.m. on April 5, 2013. Accordingly, Mr. JIMENEZ was in custody for slightly more than 13 hours.

52. Mr. JIMENEZ then returned to the precinct stationhouse, retrieved his bicycle and other belongings, and rode back to his home in Rockaway Park, Queens.

53. On Mr. JIMENEZ's fourth court appearance related to the above charges, Mr. JIMENEZ was offered, and he accepted, an adjournment in contemplation of dismissal.

54. As a result of the officer-defendants' conduct, Mr. JIMENEZ was, *inter alia*, deprived of his liberty, suffered emotional distress, and was forced to miss a day of work.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(*Against the Officer-Defendants as set forth below*)

55. Mr. JIMENEZ incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

56. The officer-defendants, under color of state law, subjected Mr. JIMENEZ to the foregoing acts and omissions and thereby deprived Mr. JIMENEZ of the rights, privileges and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights:

    a. Freedom from unreasonable searches and seizures of his person and property, against Officer ESPINAL;

    b. Freedom from false arrest and false imprisonment, against Officer ESPINAL;

    c. Freedom from retaliatory arrest and retaliatory prosecution, against Officer ESPINAL; and

    d. Freedom from having police officers fail to intervene to prevent constitutional violations where they reasonably could have done so, against Officers CALVENESE, DOE 1 and DOE 2.

57. The officer-defendants' deprivation of Mr. JIMENEZ's constitutional rights resulted in the injuries and damages set forth above.

### SECOND CLAIM
### FALSE ARREST AND FALSE IMPRISONMENT
### UNDER THE LAWS OF THE STATE OF NEW YORK
### (*Against Officer ESPINAL and THE CITY OF NEW YORK*)

58. Mr. JIMENEZ incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

59. By the actions described above, Officer ESPINAL falsely arrested Mr. JIMENEZ without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of Officer ESPINAL were the direct and proximate cause of injury and damage to Mr. JIMENEZ and violated his rights as guaranteed by the laws of the State of New York.

60. The conduct of Officer ESPINAL as alleged herein occurred while he was on duty and in uniform, and/or in and during the course and scope of his duties and functions as NYPD officer and/or while he was acting as agent and employee of THE CITY OF NEW YORK, clothed with and/or invoking state power and/or authority, and, as a result, THE CITY OF NEW YORK is liable to Mr. JIMENEZ pursuant to New York's common law doctrine of *respondeat superior*.

61. As a result of the foregoing, Mr. JIMENEZ was deprived of his liberty, suffered injury, pain and suffering, emotional injury, and was otherwise damaged and injured.

**THIRD CLAIM**
**ASSAULT AND BATTERY**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against Officer ESPINAL and THE CITY OF NEW YORK*)

62. Mr. JIMENEZ incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

63. By the actions described above, Officer ESPINAL inflicted assault and battery upon Mr. JIMENEZ by using force upon him while not having probable cause for an arrest or seizure of any kind. The acts and conduct of Officer ESPINAL and Officer CALVENESE were the direct and proximate cause of injury and damage to Mr. JIMENEZ and violated his rights as guaranteed by the laws of the State of New York.

64. The conduct of Officer ESPINAL and alleged herein, occurred while he was on duty and in uniform, and/or in and during the course and scope of his duties and functions as NYPD officer and/or while he was acting as agent and employee of THE CITY OF NEW YORK, clothed with and/or invoking state power and/or authority, and, as a result, THE CITY OF NEW YORK is liable to Mr. JIMENEZ pursuant to New York's common law doctrine of *respondeat superior*.

65. As a result of the foregoing, Mr. JIMENEZ was deprived of his liberty, suffered injury, pain and suffering, emotional injury, and was otherwise damaged and injured.

**FOURTH CLAIM**
**NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against THE CITY OF NEW YORK*)

66. Mr. JIMENEZ incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67. As demonstrated by, *inter alia*, the officer-defendants' conduct on April 4, 2013, THE CITY OF NEW YORK negligently hired, screened, retained, supervised, and trained the officer-defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Mr. JIMENEZ and violated his rights as guaranteed by the laws and Constitution of the State of New York.

68. As a result of the foregoing, Mr. JIMENEZ was deprived of his liberty, suffered injury, pain and suffering, emotional injury, and was otherwise damaged and injured.

## JURY DEMAND

69. Mr. JIMENEZ demands a trial by jury in this action on each and every one of his damage claims.

    *WHEREFORE*, Mr. JIMENEZ demands judgment against the defendants individually and jointly and prays for relief as follows:

    a.    That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

    b.    That he be awarded punitive damages against officer-defendants; and

    c.    That he be compensated for attorneys' fees and the costs and disbursements of this action; and

    d.    For such other further and different relief as to the Court may seem just and proper.

///

///

///

///

Dated: New York, New York
November 12, 2013

          Respectfully submitted,

          /s/
By: _____
          Robert M. Quackenbush
          Rankin & Taylor, PLLC
          *Attorneys for Plaintiff*
          11 Park Place, Suite 914
          New York, New York 10007
          t: 212-226-4507
          f: 212-658-9480
          e: robert@drmtlaw.com